# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| RADIANCE CAPITAL RECEIVABLES EIGHTEEN, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 2:16-cv-04280-NKL |
| v. | )<br>) |
| MATTHEW JEROME CONCANNON, | )<br>) |
| Defendant. | ) |

## ORDER

In this lawsuit, Plaintiff Radiance Capital seeks payment from Defendant Matthew Concannon as the guarantor of a loan made to Providence Farms by Premier Bank. Radiance is the successor in interest to Premier Bank and the debt is past due. Both parties have moved for summary judgment. Docs. 23 and 25. Radiance's motion, Doc. 25, is granted in part and denied in part. Concannon's motion, Doc. 23, is denied.

## I. Background

The following facts are not disputed. In October 2006 and January 2008, Providence Farms took out loans from Premier Bank and executed Promissory Notes in favor of Premier in the principal amounts of $4,379,000 and $9,700,000, respectively. The Promissory Notes were renewed from time to time, through September 2009. When the Promissory Notes matured in January 2010, Providence Farms made no payments toward the principal or accrued interest, and defaulted.

In October 2010, Premier Bank was shut down and the Federal Deposit Insurance Corporation was appointed as its receiver. The FDIC, acting as a receiver for failed institutions, has entered into structured transactions with private investors using LLCs that are co-owned by

the FDIC and private investors. Doc. 24, p. 2. CADC/RADC Venture 2011-1 is an entity organized by the FDIC as an LLC. *Id.*

CADC was a successor by assignment from the FDIC. *See* Doc. 26, p. 2, ¶ 5, and Doc. 37, pp. 1-2, ¶ 1.[1] In August 2011, the FDIC executed Allonges to the Providence Farms Promissory Notes, providing for the Notes' payment "to the order of CADC…, a Delaware limited liability company, without recourse and without representation or warranty…of any kind or nature whatsoever." Doc. 26-2, pp. 36 and 55 of 62.

In January 2012, CADC sent demand letters to Providence Farms, as well as to Jay Lindner and Matthew Concanncon as guarantors, trying to collect on the Promissory Notes. None made any payments. In February 2012, the real property securing the Notes was sold to CADC at a foreclosure sale for the credit bid of $3,663,728.00. Doc. 26-4, p. 2.

In April 2013, CADC filed suit in the Circuit Court of Boone County, Missouri against Providence Farms, Jay Lindner, and Concannon to collect on the Notes. A "Consent Judgment of Providence Farms" was entered on 9/23/2014 in the state court case. The Consent Judgment

---

[1] Concannon argues that there is no admissible evidence that these assignments occurred. However, Radiance's Custodian of Record has submitted an affidavit to show the assignments were kept in the ordinary course of business. This minimally satisfies the business record exception to the hearsay rule, *see* Fed. R. Evidence 803(6), and establishes a prima facie case of valid assignments. Because Concannon has provided no evidence to challenge this prima facie case, the validity of the assignments is undisputed. Further, the Verified Stipulation of Facts by Providence Farms, LLC, filed on 9/10/2014 in an underlying state court case, *CADC/RADC Venture 2011-1, LLC v. Providence Farms, LLC, Jay R. Lindner, and Matthew Jerome Concannon,* no. 13BA-CV01366, Circuit Court of Boone County, Missouri also shows that the assignments were made as alleged by Radiance. Doc. 26-2. This is further evidence of the trustworthiness of the statements made in the ownership documents submitted in evidence.

Concannon also alleges the "burden is on Radiance to produce the original notes." Doc. 35, p. 11 of 22, ¶ 1.C.5. However, Concannon does not cite any law that requires Radiance to produce the original notes to show a debt or to show that an assignment has occurred. Therefore it is undisputed that the debt of Providence Farms to Premier Bank was assigned from the FDIC to CADC.

was against Providence Farms only and provided that the Notes had been sold to CADC and that Providence Farm owed CADC, its successors, and assigns $15,769,774.46 in principal and interest, with interest accruing at the per diem rate of $4,298.45 from 9/1/2014 through the date of entry of judgment. Doc. 26, p. 3, ¶ 9. The Consent Judgment further provided that the judgment amount reflected a reduction of Providence Farm's obligation by the amount of the credit bid. Doc. 26-4, p. 2. "Post-judgment interest [would] accrue at the contracted rate of 13.25% on the outstanding principal balance remaining due under the [N]otes until such amount is paid in full." *Id.*, p. 3. Concannon did not object to entry of the Consent Judgment, nor was he a party to it. CADC later dismissed its state court claims against Concannon without prejudice.

Almost two years after entry of the Consent Judgment, Radiance purchased the debt obligations of Providence Farms from CADC, along with original records related to the debt including the Notes, loan documents, and guaranties. Doc. 26, p. 3, ¶ 11 (Doc. 26-5 (Bill of Sale dated 5/19/2016)) and Doc. 37-1 (Affidavit of Records Custodian). The Bill of Sale provides that pursuant to the parties' Loan Sale Agreement, CADC:

> [D]oes hereby sell, assign and convey to Buyer, its successors and assigns, all right, title and interest of Seller in and to those certain loans, judgments or evidences of debt described in Schedule "A" attached hereto and made part hereof, including assignment of all Loan Documents, ….

Doc. 26-5, p. 1. Schedule A, marked "Loan Schedule," lists:

| POOL NUMBER | ASSET NUMBER | ASSET NAME | SELLER |
|---|---|---|---|
| SFG-106 | 101900-001-DFJ | PROVIDENCE FARMS LLC | CADC/RADC VENTURE 2011-1, LLC |

3

*Id.*, p. 11. The Bill of Sale also states that it was executed "without recourse," "representation or warranty of any kind." *Id.*[2]

On 11/4/2016, CADC executed and filed an "Assignment of Judgment" in the state court case. Doc. 26, p. 3, ¶12 (citing Doc. 26-6). The Assignment stated that the Judgment entered against Providence Farms was assigned to Radiance, for value received and pursuant to the loan sale agreement executed by the parties, and incorporated by reference into the Assignment. The amounts due on the Providence Farm debts have not been fully repaid.

When Radiance purchased the debt obligations of Providence Farms and original records from CADC in 2016, one of the records was a Guaranty dated January 24, 2008. Listed at the top of the document are Premier Bank as "Lender," Providence Farms as "Borrower," and Concannon as "Guarantor." Doc. 37, p. 4, ¶ 6 (citing Doc. 26-7, p. 1, and Doc. 37-1). The Guaranty provides, in relevant part, that:

- Good and value consideration was given in exchange for the Guaranty, ¶ 2;
- Guarantor provided the Guaranty to induce Lender to extend credit to and engage in other transactions with Borrower, and executed the Guaranty with the intent that Lender rely upon the Guaranty in doing so, ¶¶ 2 and 13;
- Guarantor agreed absolutely and unconditionally to guaranty to Lender "ALL PRESENT AND FUTURE DEBTS" of "every type, purpose and

---

[2] Concannon objects to Radiance's statement, ¶ 11, concerning the CADC Bill of Sale, stating that the Bill of Sale "does not prove that CADC ever had any ownership interest to sell or that there was in fact a 'lawful' sale of anything." Doc. 35, p. 7 of 22. Concannon further objects "that the material cited cannot be presented in a form that would be admissible in evidence." *Id.* However, Radiance's statement is supported by an affidavit by a custodian of records to establish the authenticity of the documents and the affidavit suggests they are business records maintained in the regular course of business. *See* Fed. R. Evidence 803(6); *Stratton v. Portfolio Recovery Ass'n,* 171 F. Supp. 3d 585 (E.D. Ky. 2016). Concannon does not cite any evidence controverting Radiance's statement that the sale occurred. Therefore, the CADC Bill of Sale is admissible to show the transfer of ownership of the debt from CADC to Radiance. To the extent Concannon is challenging the legal effect of the sale in connection with his *ultra vires* argument, that argument is addressed in Section II.A, below.

- description," including, "without limitation, all principal, accrued interest, attorney's fees and collection costs," ¶ 2 (capitalization in original);
- "Debts" includes, among other things, the Notes, Guaranty and "(extensions, renewals, refinancings and modifications of these debts), whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as . . . the Note," ¶¶ 1.B and 2;
- Defendant consented to all renewals, extensions, modifications and substitutions of the debt, and waived notice of and consent to future advances, ¶ 3 and 3.A;
- Guarantor is unconditionally liable under the Guaranty, regardless of whether Lender pursues any remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property, and Guarantor's obligation to pay according to the terms of the Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower, ¶ 4;
- Guarantor "agree[s] that this is an absolute and unconditional Guaranty," ¶ 6;
- Default on the Guaranty occurs when the Guarantor fails to make payments in full when due, fails to perform any condition or keep any promise or covenant of the Guaranty, or any default occurs under any document related to the debt, ¶ 8.A, 8.D and 8.E;
- Guarantor waives defenses of protest, presentment, demand and notice, and generally waives other defenses, ¶ 9, 9.A and 9.C;
- Guarantor agrees to pay all costs of collection and enforcement of the Guaranty, including attorneys' fees, ¶ 11;
- Guarantor represents and warrants that he is entering the Guaranty at the request of the Borrower, he is "satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds," and that he did not rely on Lender for any information about Borrower, ¶ 12;
- Guarantor represents and warrants that he has "a direct interest in the Borrower and expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guaranteed hereby," ¶ 13;
- Lender "may rely conclusively on a continuing warranty that [Guarantor] continue[s] to be benefitted by this Guaranty and [Lender] will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by [Lender] without regard to the receipt, nature or value of any such benefits," ¶ 13;
- It is assignable without notice to or consent by Guarantor, and enforceable by assignees and successors of Lender, ¶ 16; and

- Lender is permitted to obtain Guarantor's credit report from time to time, ¶ 19.

Doc. 26-7, pp. 1-3.

Evidence concerning who executed this Guaranty, and its delivery to Premier Bank, is disputed and will be reviewed below.

## II. Radiance's Motion for Summary Judgment

Radiance moves for summary judgment on its breach of guaranty count, but not on its quantum meruit count.

To recover on a breach of guaranty in Missouri, the creditor must show that: (1) the defendant executed the guaranty; (2) the defendant unconditionally delivered the guaranty to the creditor; (3) the creditor, in reliance on the guaranty, thereafter extended credit to the debtor; and (4) there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. 1993) (en banc). Radiance must also show that it has a valid assignment of the Providence Farms debt which it seeks to enforce against Concannon as the guarantor.

### A. Does Radiance have a valid assignment of the Providence Farms debt?

As a preliminary matter, Concannon argues that Radiance cannot show it owns the Providence Farms debt because there is not admissible evidence to show an assignment of the debt to Radiance and any assignment that can be proven is invalid because the FDIC acted *ultra vires* when it assigned the debt to CADA.

In cases that involve a party attempting to recover an amount owed to some other party, "proof of an assignment … is essential to a recovery." *CACH, LLC v. Askew*, 358 S.W.3d 58, 61-62 (Mo. 2012) (citing *Midwestern Health Mgmt., Inc. v. Walker,* 208 S.W.3d 295, 298 (Mo. App.

6

2006)). "The party must show clearly through a valid assignment [that] it is the rightful owner of the account at issue." *Id.* (citing *C. & W. Asset Acquisition, LLC v. Somogyi,* 136 S.W.3d 134, 140 (Mo. App. 2004)). Where there are multiple assignments, "there must be proof of the validity of assignment every time the rights to collect the debt are transferred" in order for the party trying to collect the debt to demonstrate standing. *Id.* (citing *Mitchell v. St. Louis Argus Pub. Co.,* 459 S.W.2d 1, 5–6 (Mo. App. 1970), and *Walker,* 208 S.W.3d at 298.)) But under Missouri law, "'[n]o particular form of words is necessary to accomplish an assignment, so long as there appears from the circumstances an intention on the one side to assign ... and on the other side to receive.'" *Rabius v. Brandon*, 257 S.W.3d 641, 645 (Mo. App. 2008) (quoting *Keisker v. Farmer,* 90 S.W.3d 71, 74 (Mo. banc 2002)). "[A]ny language, however informal or poorly expressed," that "shows the intention of the owner" of a right to recover a debt or damages on a contract-based cause of action to "clearly and unconditionally" transfer that right, and "sufficiently identifies the subject matter[,] will be sufficient to vest the property therein in the assignee." *Rotert v. Faulkner*, 660 S.W.2d 463, 469 and n.10 (Mo. App. 1983) (quoting *Greater Kansas City Baptist & Cmty. Hosp. Ass'n, Inc. v. Businessmen's Assurance Co.,* 585 S.W.2d 118, 119 (Mo. App. 1979)). Neither the word "assign" nor "assignment" must be used in order to accomplish an assignment. *Businessmen's Assurance,* 585 S.W.2d at 119.

Here, the evidence is undisputed that the FDIC executed Allonges to the Notes, providing for payment on the Notes to the order of CADC without recourse, representation, or warranty of any kind. In other words, the FDIC intended to and did transfer the right to payment on the Notes to CADC, clearly and unconditionally. CADC was subsequently able to obtain a judgment in its favor in state court, against Providence Farms, for the amounts still due under the Notes. CADC in turn sold its right to collect the judgment to Radiance and an assignment of

judgment was filed. The undisputed evidence demonstrates the intention of the FDIC to assign and of CADC to receive, and of CADC to assign and Radiance to receive. Therefore, the Court rejects Concannon's argument that there is insufficient evidence to establish an assignment from the FDIC to CADC and from CADC to Radiance.

Concannon's *ultra vires* argument also fails. Concannon states that the FDIC, acting as a receiver for failed institutions, has entered into structured transactions with private investors using LLCs that are co-owned by the FDIC and private investors. CADC is an entity organized by the FDIC as an LLC, the initial member of which was the FDIC. Concannon argues that such actions by the FDIC are *ultra vires* because it is a creature of statute, and there is no explicit statutory authority for it to have formed an LLC, become a member of an LLC, admit a private entity to the LLC, or authorize such an LLC to manage and sell the assets of a failed institution on behalf of the FDIC. Doc. 35, pp. 18-19 of 22.

However, as provided by statute, the FDIC has broad powers to carry out its duties. *See* 12 U.S.C. § 1819(c) (providing that the FDIC has authority "to exercise by its Board of Directors, or duly authorized officers or agents, all powers specifically granted by the provisions of this chapter, and such incidental powers as shall be necessary to carry out the powers so granted"; and to "act as receiver"). Clearly, the FDIC's power to act as a receiver includes the power to dispose of property held by failing banks including debts owed to the bank. This necessarily includes the authority to assign or otherwise sell those assets to third parties.

> **B. Has Radiance shown as a matter of law that Concannon executed the Guaranty?**
>
> **1. Evidence submitted by Radiance to show Concannon executed the disputed Guaranty.**

In its Suggestions in Support of Summary Judgment, Radiance states that Concannon

executed the Guaranty in dispute here. Doc. 26, p. 3, ¶ 13 (Doc. 26-7 (Guaranty), pp. 1 and 3; Doc. 37-1 (Custodian of Records Affidavit[3]), pp. 1-2). In support, it has produced an affidavit from the Custodian of Records suggesting that the Guaranty is kept in the ordinary course of Radiance's business. The Guaranty is therefore a business record and can be admitted in evidence if it is authenticated. To be authenticated, Radiance must establish that the Guaranty was signed by Concannon. To establish this fact, Radiance relies primarily on evidence that Concannon has never denied that the signature is his.

Radiance states that Concannon failed to deny execution in his Answer in the underlying state court case (citing Doc. 26-8); his verified Answers to First Interrogatories in the underlying state court case (citing Doc. 26-9, ¶¶ 2 and 5); his Answers to Second Interrogatories in the underlying state court case (citing Doc. 26-10, p. ¶1.C); his deposition in a state court case (citing Doc. 26-11); and his Answer to the Complaint in the case before this Court (citing Doc. 20, ¶ 11 (stating he lacks knowledge and therefore denies execution)). Concannon does not challenge the validity of these documents and therefore they will be deemed admissible for purposes of this summary judgment order. The evidence cited by Radiance and contained in these documents is therefore undisputed.

Radiance next cites Concannon's deposition testimony in a state court case. Doc. 26, p. 7, ¶ 18 (citing Doc. 26-11, pp. 62-63). There, the deposing attorney asked Concannon about a copy of the disputed Guaranty that Concannon had produced in discovery in that case. The attorney asked Concannon why he had it, and Concannon answered that he did not know. Concannon does not dispute his statements and they are admissible as a statement of a party

---

[3] The Custodian of Records states that the records purchased by Radiance from CADC include the signed, original Guaranty at issue in the case before this Court. Doc. 37-1, p. 2.

opponent.

Radiance also cites one of Concannon's affidavits, stating that Concannon "admit[ted] … that he guaranteed the debt of [Providence Farms], but would never have done so were he aware of certain facts." Doc. 26, p. 8, ¶ 23 (citing Doc. 26-12, ¶¶ 46-48). Concannon responds that that is not what the affidavit states. The Court finds that the affidavit states, "If José Lindner" had expressly asked him to guaranty millions of dollars of loans to Providence Farms, or disclosed the financial condition of Providence Farms and then asked Concannon to guaranty millions of dollars of loans, Concannon "never would have made such guaranties." *Id.* The affidavit as written is admissible and the facts contained therein are undisputed for purposes of summary judgment.

Radiance cites an exhibit containing bank documents from Premier Bank's files that included member authorizations signed by Concannon, and Concannon's personal and family financial statements, credit reports, W-2s, and other financial underwriting documents in the nature of that used to evaluate the credit of a guarantor. Doc. 26, p. 8, ¶ 24 (citing Doc. 13). Radiance states in its next paragraph that the Guaranty contains a provision permitting the lender to obtain financial information about the Guarantor, and that it would be inappropriate for the lender to have such information about Concannon but for the execution of the Guaranty. *Id.*, ¶ 25. Because Concannon does not controvert this evidence, these facts are undisputed.

Radiance states that Concannon "produced to Plaintiff from his own documentation dozens of examples of [Concannon] guaranteeing the debt of [Providence Farms] for other lenders, being listed as guarantor to receive notice…," providing financial information to lenders, representing that he was a member of Providence Farms, signing borrower authorizations, and "generally being intimately involved in the daily business dealings of

10

Borrower." Doc. 26, p. 9, ¶ 26 (citing Doc. 26-14). Radiance's cited exhibit, Doc. 26-14, is over 70 pages long and consists of a variety of documents. Some of the documents are emails from Concannon to Lindner prior to the date of the Guaranty and involve the gathering of Concannon's personal financial information. *E.g.,* Doc. 26-14, pp. 7-9. Other documents post-date the Guaranty and it is unclear whether, when, or why they came into Concannon's possession, to what use they were put, or even what some are. Concannon does not admit or controvert the statement, but "objects" that the documents do not "self prove" that they came from Concannon's personal possession or are his "own documentation," and that there is no indication where or when Concannon's counsel obtained the documents. Doc. 35, p. 9 of 22, ¶ J. The emails may be construed as admissions of a party opponent and are therefore admissible, but Radiance fails to demonstrate the admissibility of the remaining documents at this time. They therefore will not be considered for purposes of summary judgment, but can be resubmitted at trial with appropriate clarification.

Finally, Radiance states that Concannon's tax returns show that Concannon claimed to be an "owner" of Providence Farms in 2008 and 2009, and that he and his spouse have "taken tax benefits by claiming to be an owner and/or guarantor of" Providence Farms. Doc. 26, p. 9, ¶¶ 28-29 (citing Doc. 26-15, tax documents). Concannon also claimed active losses in 2007, and an ownership interest in 2010 and 2011. *Id.* (citing Doc. 36-1).

### 2. Evidence submitted by Concannon to dispute Radiance's signature evidence.

In an affidavit, Concannon states that he does not recognize the disputed Guaranty, cannot identify it, and cannot authenticate the signature on it. He further states that the first time he met in person with or had any form of electronic or other communication with any representative of Premier Bank concerning Providence Farms was long after January 24, 2008,

and that the first communication he recalls between himself and Premier Bank occurred in approximately 2010 (Doc. 24-1). In addition, Concannon cites portions of discovery and other materials that he submitted in state court proceedings involving the same disputed Guaranty. In the cited materials, Concannon states that he lacks sufficient information to admit or deny signing the Guaranty (Doc. 26-3); does not recall signing it and cannot authenticate his signature on it because he may have been defrauded by Jose Lindner with respect to placement of his signature on loan documents, denies that he was expressly requested to guaranty a loan (Doc. 36-9); and denies that he would have guaranteed millions of dollars of loans if Lindner had asked him to guaranty them (Doc. 26-12). Finally, Concannon states Lindner may have defrauded him by telling him he did have an interest in Providence Farms when he really did not. (Doc. 26-12).

### 3. Discussion – Signature issue

Having carefully reviewed the record, the Court cannot say that the undisputed facts show as a matter of law that Concannon signed the Guaranty. Radiance points to the signature on the Guaranty as such evidence, but it is not self-proving. While the Court is aware that the record contains examples of Concannon's signature on multiple documents which can be compared to the signature on the disputed Guaranty, such a comparison is for a fact finder at trial, not at the summary judgment stage.

While the evidence cited by Radiance is circumstantial evidence that Concannon did sign the Guaranty, it does not establish this fact as a matter of law. For example Radiance relies heavily on the fact that the Concannon never denied he signed the Guaranty either in earlier litigation or in this litigation. Rather, Concannon states in an affidavit in this case that he does not recognize the Guaranty, doesn't remember signing the Guaranty, and cannot authenticate it. It is for a fact finder to determine whether he is telling the truth when he so states. Further, the

burden of proof is on Radiance to show it is Concannon's signature, and his failure to admit or deny he signed it does not show it is his signature, although it could be relevant evidence if the Court concludes that Concannon is intentionally obfuscating the truth.[4]

Radiance cites other evidence to show that Concannon did sign the Guaranty, including Concannon's inability to explain how he could produce a copy of the Guaranty in discovery if he did not execute it, and how Premier Bank had Concannon's financial information in its files unless the bank was authorized to obtain it for the purpose of making a loan to Providence Farms and obtaining a Guaranty from Concannon. Concannon admits that he spoke with Premier Bank about Providence Farm getting current on its debt and while he claims that he did this after the date of the Guaranty, it is still evidence that he had an interest in loans that Premier Bank extended to Providence Farms. Concannon also admits that at the time of the Guaranty and at the time that Providence Farms was not current on its debt, he believed himself to have had an ownership interest in Providence Farms

While this evidence that is undisputed is consistent with Concannon having signed the Guaranty, it does not conclusively demonstrate that he did so, especially because at this stage of

---

[4] Radiance also argues that this Court may rely on Mo. S. Ct. Rule 55.23, which provides that "where a party's claim or defense depends on a written instrument and that party has attached a copy of the instrument to its pleading, the execution of such instrument shall be deemed confessed unless the party charged to have executed the same shall specifically deny the execution thereof." Radiance argues that Concannon has not specifically denied signing the Guaranty, and therefore should be deemed to have done so pursuant to the state court rule. Doc. 36, p. 8 (incorporated by Doc. 37, p. 11). Although a district court applies the substantive law of the forum state in which it sits, it applies the federal laws governing procedure. *Hanna v. Plumer,* 380 U.S. 460, 465-66 (1965); *Hiatt v. Mazda Motor Corp.,* 75 F.3d 1252, 1255 (8th Cir. 1996). The Federal Rules of Civil Procedure govern the procedure in all civil actions in the United States District Courts. Fed. R. Civ. P. 1. Because the rule that Radiance cites is a procedural rule concerning pleading in Missouri state courts, the rule does not apply in the case before this Court and the Guaranty therefore cannot be deemed to have been signed by Concannon pursuant to that rule.

the litigation, the evidence must be viewed in the light most favorable to Concannon as the non-movant and all inferences construed in his favor. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)) (When deciding a motion for summary judgment, the court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). Construing the evidence in the light most favorable to Concannon and all inferences in his favor at this stage of the litigation, the Court cannot find as a matter of law that Concannon signed the Guaranty. That matter must be resolved by the Court during trial.

    **C.    Has Radiance shown as a matter of law that Concannon or his agent delivered the Guaranty to Premier Bank?**

Radiance relies on the same evidence with respect to the element of delivery of the Guaranty as it relied on with respect to execution. Radiance adds in reply that both parties have a copy of the Guaranty in their possession and have produced it in discovery in this case. Doc. 36, p. 3, ¶ 5 (citing Doc. 36-3) (incorporated by reference, Doc. 37, p. 7).

Concannon likewise relies on the same evidence he submitted with respect to execution, including his statements that he never personally met or communicated with a Premier Bank representative until long after January 24, 2008; that the first communication with Premier Bank he recalls occurred around 2010; that he does not recall signing the Guaranty; and that Lindner may have defrauded Concannon in connection with Providence Farms. Doc. 35, p. 10 of 22, ¶ 2 (citing Doc. 24-1, and Doc. 26-10, ¶ 1.C).

It is undisputed that Premier Bank received the Guaranty, but whether it was received from Concannon or his apparent agent is for the fact finder to decide in light of all the evidence submitted by Radiance.

**D. Has Radiance shown as a matter of law that Premier Bank relied on the Guaranty to extend credit to the Premier Bank?[5]**

The Guaranty by its terms states that it was provided to induce Lender, Premier Bank, to extend credit to and engage in other transactions with Providence Farms, and was executed with the intent that Lender rely upon the Guaranty in doing so. Premier Bank did extend credit and engage in other transactions with Providenc Farms after the execution date of the Guaranty. To the extent that Concannon claims not actually to have been a member of Providence Farms, or claims that he received no benefit from the Guaranty, such claims do not defeat the third element. A "guarantor need not receive any benefit from either the principle contract or the guaranty" and a "guarantor's liability for a corporation's debt does not depend upon the guarantor's interest in the corporation." *Landmark Bank of St. Charles Cty. v. Saettele,* 784 F.Supp. 1434, 1439 (E.D. Mo. 1992) (citing *Henty Construction Co. Inc. v. Hall,* 783 S.W.2d 412, 418 (Mo. App. 1983)).

There is no genuine dispute of material fact and Radiance is entitled to summary judgment as a matter of law with respect to the third element of Radiance's claim.

**E. Has Radiance shown as a matter of law the amount due on the Providence Farms note and the disputed Guaranty?**

A judgment was obtained against Providence Farms in September 2014 in connection with its default on the relevant Providence Farm Notes, establishing the amounts due on them. Those amounts remain unpaid. Further, the Guaranty expressly provides that the Guarantor absolutely and unconditionally guaranties to Lender "ALL PRESENT AND FUTURE DEBTS"

---

[5] The Court has already concluded that Radiance is not entitled to summary judgment on the first and third elements of its Guaranty claim. However, pursuant to Fed. R. Civ. P. 56(g), which permits summary judgment to be entered on individual elements of a claim, the Court will address whether Radiance is entitled to summary judgment with respect to the remaining elements of the Guaranty claim. Hopefully, this will streamline any fact finding for trial.

of "every type, purpose and description," including the Notes and extensions, renewals, refinancings, and modifications of Borrower's present and future debts arising from the terms of all documents prepared or submitted in connection with the Notes.

Concannon argues that Radiance failed to establish the amount due and owing, in that the Notes were not attached to the Complaint, and Radiance relied on the Consent Judgment against Providence Farms in the state court case. Concannon contends that the Consent Judgment is not binding on Concannon because he was not a party to the judgment. Docs. 35, pp. 14-16 of 22 (and citations therein); and Doc. 24, pp. 5-6 (and citations therein). Concannon cites no authority demonstrating that the only way to prove an amount due and owing on a note is to attach it to a complaint, or produce it. Courts routinely accept various forms of proof, other than or in addition to the actual note, of what is due and owing on an underlying debt. *See, e.g., Reyburn v. Spires,* 364 S.W.2d 589, 563 (Mo. 1963); *Affiliated Acceptance Corp. v. Boggs,* 917 S.W.2d 652, 656 (Mo. App. 1996); and *Stewart Title Guar. Co. v. WKC Restaurants Venture Co.,* 961 S.W.2d 874, 878 (Mo. App. 1998), *abrogated on other grounds, Boone Nat. Sav. & Loan Ass'n, F.A. v. Crouch,* 2001 WL 182415 (Mo. App. Feb. 27, 2001). In *Reyburn*, 364 S.W.2d at 563, for example, the Missouri Supreme Court held that a "judgment constitutes proof of a debt…from the time of its rendition."

To the extent Concannon is arguing that the Providence Farms notes are not authentic, Radiance has provided an affidavit from the Custodian of Records to establish the original notes are available and to suggest the copies are business records admissible in evidence. Doc. 37-1. As for the amount due on the notes, the judgment entered against Providence Farms in the state court case is prima facie evidence of the debt Providence Farms owes. Also, the evidence is undisputed that no other amounts have been paid by or on behalf of Providence Farms toward its

debts. Nothing in the terms of the Guaranty, which must be strictly construed, *Boatmen's Bank of Jefferson County v. Community Interiors, Inc.,* 721 S.W.2d 72, 79 (Mo. App. 1986), requires judgment to have been entered against Concannon in order to enforce its terms against him. To the contrary, the Guaranty expressly provides that it covers all debts of Providence Farms, of every type, purpose, and description, including principal and accrued interest. Radiance has clearly established a prima facie case of the debt due and Concannon has failed to produce any evidence or legal argument to actually challenge the amount due.

There is no genuine dispute of material fact concerning the amount due and Radiance is entitled to summary judgment as a matter of law with respect to the fourth element.

### III. Concannon's motion for summary judgment

Concannon moves for summary judgment on both counts of the Complaint – the breach of guaranty claim and the quantum meruit claim.

#### A. Breach of guaranty

Concannon is not entitled to summary judgment on the guaranty claim. Viewing the evidence in the light most favorable to Radiance, the non-movant, there is circumstantial evidence from which a reasonable fact finder could conclude that Concannon did sign the disputed Guaranty and did deliver it to Premier Bank, either directly or through an agent with apparent authority. Because the Court has already found that Radiance is entitled to judgment as a matter of law on the elements of reliance and the amount due on the debt, Concannon cannot show he is entitled to summary judgment against Radiance on these elements. Therefore, Concannon's motion for summary judgment on the guaranty claim fails.

#### B. Quantum meruit

Concannon argues that the remedy of quantum meruit does not apply if there is a breach

of a contract, and that in any event he did not receive a benefit. Doc. 24, pp. 9-10.

Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is based primarily on the principle of unjust enrichment. *Int'l Paper Co. v. Futhey*, 788 S.W.2d 303, 306 (Mo. App. 1990). The essential elements of the claim are: (1) benefit conferred by one party on another, (2) appreciation or recognition by the receiving party of the fact that what was conferred was a benefit, and (3) acceptance and retention of the benefit in circumstances that would render that retention inequitable. *Lucent Techs., Inc. v. Mid-W. Elecs., Inc.*, 49 S.W.3d 236, 241 (Mo. App. 2001). The most significant requirement is that the enrichment to the defendant be unjust. *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 264 (Mo. App. 1984). The measure of recovery is the reasonable value of the goods or services furnished to the benefited defendant. *Johnson Grp., Inc. v. Grasso Bros.,* 939 S.W.2d 28, 30 (Mo. App. 1997).

A quantum meruit claim may be pled in the alternative to a breach of contract claim. Fed. R. Civ. P. 8(e)(2) (pleading in the alternative); *Joseph C. Sansone Co. v. Dow Corning Corp.,* 2006 U.S. Dist. LEXIS 28237, at * 1 (E.D. Mo.2006) ("In Missouri, a party may plead both breach of contract and quantum meruit."). However, no cause of action for quantum meruit lies under Missouri law where there is an enforceable contract governing the rights and obligations of the parties. *Burrus v. HBE Corp.,* 211 S.W.3d 613, 619 (Mo. App. 2006) ("[A] plaintiff may not maintain an action in *quantum meruit* where the plaintiff's relationship with the defendant is governed by an existing contract.").

Because of the overlap of facts necessary to prove the guaranty claim and the quantum meruit claim in this case, the Court cannot at this time determine whether the quantum meruit claim is precluded, because it has not yet been resolved whether Radiance has an enforceable

breach of contract claim. As previously discussed, there is also a dispute about whether Concannon received a benefit from Premier Bank's loan to Providence Farms.

## IV. Conclusion

For the reasons discussed above, Plaintiff Radiance Capital Receivables Eighteen, LLC's motion for summary judgment, Doc. 25, is granted in part and denied in part. Defendant Matthew Jerome Concannon's motion for summary judgment, Doc. 23, is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  September 20, 2017
Jefferson City, Missouri