# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| RADIANCE CAPITAL RECEIVABLES EIGHTEEN, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 2:16-cv-04280-NKL<br>)<br>) |
| MATTHEW JEROME CONCANNON, | )<br>) |
| Defendant. | ) |

## ORDER

Following a bench trial held on September 26, 2017, the Court entered a final Order and Judgment in favor of Plaintiff Radiant Capital on its breach of guaranty claim and request for costs of collection. Docs. 80 and 81 (dated October 10, 2017). Before the Court are Defendant Concannon's Motion to Amend Findings and Judgment under Fed. R. Civ. p. 52(b) and 59(e), Doc. 84, and Plaintiff Radiance Capital's Petition for Award of Attorneys' Fees and Costs, Doc. 83. The Motion to Amend is denied and the Petition for Award is granted.

In this lawsuit, Radiance sought payment from Concannon as the guarantor on Providence Farms' promissory notes payable to Premier Bank. The debt was past due and Concannon refused to pay pursuant to the guaranty. Radiance sued as the successor in interest to Premier Bank, for breach of Guaranty or in the alternative, under quantum meruit.

To recover on a breach of guaranty in Missouri, a creditor must show that: (1) the defendant executed the guaranty; (2) the defendant unconditionally delivered the guaranty to the creditor; (3) the creditor, in reliance on the guaranty, thereafter extended credit to the debtor; and (4) there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*,

854 S.W.2d 371, 382 (Mo. 1993) (en banc).  Radiance, as successor in interest to Premier Bank, was also required to show that it had a valid assignment of the Providence Farms debt and the Guaranty that it sought to enforce against Concannon.  Concannon asserted the defense of fraud in the factum, on the basis that José Lindner made misrepresentations in connection with the Guaranty.

The Court granted Radiance summary judgment with respect to three elements of its breach of Guaranty claim—reliance by Premier Bank, ownership of the Guaranty and debt by Radiance, and the amount due and owing on the debt.  The remaining elements were tried to the Court.  The key disputes at trial were:  (1) Whether Concannon executed the Guaranty, (2) Whether the Guaranty was delivered to Premier Bank on Concannon's behalf by José Lindner, and (3) Concannon's fraud in the factum defense that would make the Guaranty void even if signed and delivered.  The Court concluded that Radiance had proven its claim for breach of guaranty and that Concannon's fraud defense failed.

**I.       Concannon's motion to amend under Rules 52(b) and 59(e).**

Concannon raises three grounds for relief.  He states that the Court overlooked law concerning the duty to ascertain the scope of an actual agent's authority; misapplied the law governing the creation of an actual agency; and overlooked evidence presented at trial establishing that José Lindner was Concannon's fiduciary. Doc. 84, p. 1.  He asks the Court to make amended or additional findings of fact; to hold that Radiance failed to carry its burden to prove Concannon delivered the disputed guaranty and that Concannon carried his burden to prove the defense of fraud in the factum; and to enter judgment in his favor. *Id.,* pp. 1-2.

The purpose of a motion under Rule 52(b) or Rule 59(e) is to correct manifest errors of law or fact made at trial, or to present newly discovered evidence. *Pro Edge, L.P. v. Gue*, 377

F. Supp. 2d 694, 698 (N.D. Iowa 2005) (and citations therein); and *Dale and Selby Superette & Deli v. U.S. Dep't of Ag.,* 838 F. Supp. 1346, 1348 (D. Minn. 1993) (and citations therein). Such a motion is "not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." *Dale and Selby,* 838 F. Supp. at 1348.

Concannon does not seek to present newly discovered evidence and, as discussed below, he has failed to demonstrate any manifest error of law or fact. Therefore, the motion to amend is denied.

> A. **Duty to ascertain the scope of authority, or make reasonable inquiry.**

Concannon first argues that the Court overlooked law concerning the duty to ascertain the scope of an agent's actual authority, or to make reasonable inquiry. He argues that the duty applies to all forms of agency including actual agency, not only "apparent agency" as "[this] Court suggest[ed]" in its Order. Doc. 85, p. 5 of 18 (Section I). He asks the Court to find that, even if José Lindner had actual authority, Premier Bank had a duty to ascertain the scope of that authority and negligently failed to inquire. He argues that if Premier Bank had made reasonable inquiry, then the bank "would have learned that Concannon did not intend to deliver the Disputed Guaranty, and this entire fiasco would have been avoided." Doc. 85, p. 7 of 18.

Concannon cites a line of Missouri cases in which courts held that an entity such as a bank has a common law duty to inquire into the scope of an agent's authority, when the entity has notice that the person is acting as an agent. *Id.*, pp. 6-7 (and citations therein). But Concannon overlooks that actual and apparent authority are defenses to failure to inquire. The most recent authority cited by Concannon is the Missouri Supreme Court's decision in *Dalton & Marberry, P.C. v. NationsBank, N.A.,* 982 S.W.2d 231 (Mo. 1998) (en banc). There, an accountant embezzled funds from her employer's, Dalton & Marberry's, payroll account. The

employee obtained valid signatures on Dalton & Marberry checks, made payable to the NationsBank, then took the checks to the bank and obtained blank cashier's checks or money orders. The bank never inquired whether the employee was authorized to obtain the blank cashier's checks or money orders. Dalton & Marberry sought to recover the amount of the embezzled funds from the bank, pursuant to the common law duty of inquiry recognized decades earlier in *Martin v. First National Bank in St. Louis,* 219 S.W.2d 312 (Mo. 1949). *Id.* at 232.

The *Dalton* court held that *Martin* was "still good law" and that "[a] payee bank is liable if it fails to inquire as to the authority of an agent of the drawer-depositor who wrongfully diverts the proceeds of a check made payable to the order of the bank itself." *Id.* at 233-34. "However," the court held, "the claim is subject to the defense of actual and apparent authority." *Id.* at 233. "In Missouri, a payee bank may avoid liability by proving that the agent has actual or apparent authority from the drawer-depositor." *Id.* at 235. Put a slightly different way, proof of actual authority would obviate the need to examine whether a bank made reasonable inquiry. This Court has located no authority disturbing the Missouri Supreme Court's holding in *Dalton*.

This Court concluded in the Order of 10/10/2017 that the Guaranty was delivered to Premier Bank and that Lindner had actual authority to do so. Doc. 80, p. 18. The Court also acknowledged Concannon's argument that Radiance had failed to carry its burden to show that Premier Bank made a reasonable inquiry into the scope of Lindner's authority when he delivered the Guaranty, and that Radiance had therefore fatally failed to demonstrate that Lindner had apparent authority. *Id.*, p. 19. But, the Court held, Concannon's argument would not be addressed "[b]ecause Lindner had actual authority[.]" *Id.*, pp. 19-20. The Court's conclusion is entirely consistent with the Missouri Supreme Court's holding in *Dalton* that actual authority is a defense to a claim of failure to make reasonable inquiry, and this Court is bound to follow

Missouri law as announced by Missouri's Supreme Court. No purpose would be served by addressing Concannon's argument concerning the duty of reasonable inquiry and apparent authority.

Concannon has failed to demonstrate manifest error of law or fact, and his first argument therefore fails.

### B. Actual agency and prior acts.

Concannon next states that the Court misapplied the law governing actual agency. He argues that "[i]n its dispositive order, the Court found implied authority based on course of conduct rather than implied authority incidental to expressly conferred authority. In doing so, the Court overlooked material facts and misapplied the law of implied agency[.] … The relevant test is whether Lindner '…repeatedly performed *acts like the one in question*[,]'" i.e., "acts…(if any) that show Lindner acting as Concannon's agent to deliver personal guaranties and other instruments personally obligating Concannon to repay millions of dollars in loans, or similar acts." Doc. 85, p. 10 of 18 (Section II.C) (emphasis in original). He asks the Court to find "that there were no prior acts of agency like the one in question; therefore concluding that José Lindner did not have actual authority; and therefore concluding that there was no effective delivery by Lindner on behalf of Concannon[.]" Doc. 84, p. 2. Concannon has identified neither manifest error of law nor fact.

The Court made findings of fact that:

> [] Concannon signed the Guaranty and was aware that he was signing it. The parties stipulated that the Guaranty was in the loan file of the original creditor, Premier Bank, and that the bank relied on the Guaranty in extending credit to Providence Farms.
>
> Concannon testified that he had no interactions with Premier Bank on or around January 24, 2008, and that the first interaction he recalls with Premier Bank personnel was at least a year later.

> However, Concannon admitted in a deposition that when José Lindner gave him documents to sign, he thought or assumed that Lindner was acting on his behalf, and that he paid Lindner to act on his behalf. Plaintiff's Exhibit 11, Vol. II, pp. 94-95. Concannon relied on Lindner to prepare his tax forms, draft the Millennium Medical Services operating agreement, and prepare other forms related to Providence Farms for his signature. Concannon also invested in Providence Farms and loaned money to Providence Farms based on what Lindner told him. In short, Concannon relied on José Lindner to represent him to take care of Concannon's business.
>
> Concannon did not rebut the foregoing evidence which at minimum makes a *prima facie* case that José Lindner delivered the Guaranty to Premier Bank on behalf of Concannon.

Doc. 80, pp. 17-18.

With respect to Missouri law of agency, the Court stated:

> Actual authority is authority which the principal has conferred, either expressly or impliedly, on the agent, empowering the agent to act on the principal's behalf. [*Hyken v. Travelers Ins. Co.,* 678 S.W.2d 454, 457–58 (Mo. App. 1984)] (citing Restatement (Second) of Agency § 7 (1958)). A principal can expressly confer authority by telling his agent what to do or by knowingly acquiescing to the agent's actions. *Rosenblum v. Jacks or Better of America West, Inc.,* 745 S.W.2d 754, 760 (Mo. App. 1988). Implied authority flows from express authority, and "encompasses the power to act in ways reasonably necessary to accomplish the purpose for which express authority was granted." *Id.* The customs and the relations of the parties establish the parameters of implied actual authority. *Barton v. Snellson,* 735 S.W.2d 160, 162 n. 2 (Mo. App. 1987); *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83, 87 (Mo. App. 1981); *Dudley v. Dumont,* 526 S.W.2d 839, 844 (Mo. App. 1975). …

Doc. 80, pp. 18-19. Based on its findings of fact, the Court concluded that:

> [] Lindner had Concannon's actual authority to deliver the Guaranty to Premier Bank, at minimum because Concannon knowingly acquiesced to Lindner's actions in representing his business and financial interests. Furthermore, Lindner's delivery of the Guaranty to the bank was well within the parameters of his implied actual authority, as established by Lindner's and Concannon's customs and relationship.

*Id.*, p. 19.

Concannon relies upon and quotes *Austin-Western Road Machinery Co. v. Commercial State Bank,* 255 S.W. 585, 588 (Mo. App. 1923), in support of his argument that Radiance's claim must fail because there was no evidence that Lindner "repeatedly performed acts like the one in question[.]" But Concannon overstates the holding in *Austin-Western*. The *Austin-Western* court did not establish a bright line for proof of actual agency through implied authority that requires repeated performance of prior, similar acts. Rather, the court held that "[a]n agent's authority may be inferred" under such circumstances. *Id.*

Subsequent Missouri cases confirm that a bright line does not exist. The court held in *Bennett v. Potashnik*, for example, that "agency may be implied from prior habits or course of dealings between the parties[,]" and that a "single transaction[,]" as well as a "series of transactions[,]" could suffice to demonstrate agency. 257 S.W. 836, 838 (Mo. App. 1924) (and citations therein), *See also Jefferson-Gravois Bank v. Cunningham,* 674 S.W.2d 561, 563-64 (Mo. App. 1984) (same) (citing *Bennett*). In *Thimmig v. General Talking Pictures Corp.,* 85 S.W.2d 208 (Mo. App. 1935), the plaintiff, a salesman, corresponded with the defendant, a motion picture corporation, proposing that he be hired by the defendant as its representative in the St. Louis area. The defendant wrote to the plaintiff that his proposal would be turned over to the defendant's employee, J.L. Gertz. Gertz was the defendant's agent for certain matters, but the letter did not expressly identify Gertz as the defendant's agent for purposes of hiring the plaintiff. Gertz hired the plaintiff to sell the defendant's products, but the defendant refused to pay the plaintiff, arguing that Gertz had not hired the plaintiff on the defendant's behalf, but on Gertz's personal behalf. The court held that, although the defendant's letter to the plaintiff did not expressly authorize Gertz to hire the plaintiff on the defendant's behalf, the matter of the

plaintiff's employment was the only subject to be taken up by Gertz. Under the circumstances, "[t]he evidence relating to Gertz's employment of plaintiff as a salesman for defendant was … competent under the theory of implied authority[.]" *Id.* at 212.

In *Wilks v. Stone,* the Missouri Court of Appeals summarized, "As to what facts, circumstances, and conduct will justify the inference of agency, no fixed rule can be stated. There is no particular mode by which it must be established. It depends upon the situation in each individual case." 339 S.W.2d 590, 595 (Mo. App. 1960) (and citations therein). The *Wilks* court then listed circumstances that could be considered, including the relationship of the parties; the prior conduct of the parties; or acceptance and retention of the fruits of a contract with knowledge of the material facts of the transaction. *Id.* at 595. The court also listed a party's failure to "dissent or speak up when ordinary human conduct and fair play would normally call for some negative assertion within a reasonable period of time[.]" *Id.* Such "failure tends to justify the inference that the principal acquiesced in the course of events and accepted the contract as his own." *Id.*

Accordingly, in reaching its conclusion that Lindner had implied, actual authority to deliver the Guaranty, the Court appropriately considered the circumstances: Concannon signed the Guaranty and knew that he was doing so. He paid Lindner to act on his behalf. He relied on Lindner to prepare other, important tax and business forms for him, including forms related to Providence Farms. He invested in and made loans to Providence Farms based on what Lindner told him. Doc. 80, p. 19. The Court also appropriately applied the law, in concluding that Concannon had actual authority to deliver the Guaranty, at minimum because Concannon knowingly acquiesced to Lindner's actions in representing his business and financial interests. Plainly, Concannon did not sign documents given to him by Lindner—whether tax forms,

business forms including ones related to Providence Farms, or the Guaranty—simply for the sake of signing the documents. Ordinary human conduct and principles of fair play would normally call for some negative assertion on the part of Concannon when he knowingly signed the Guaranty, had he not acquiesced in Lindner's follow through, *i.e.*, delivery of the document. *See Wilks,* 339 S.W.2d at 595.

The Court appropriately applied the law in further concluding that Lindner had actual authority to deliver the Guaranty, because it was well within the parameters of his implied actual authority, as established by Lindner's and Concannon's customs and relationship. "The customs and the relations of the parties establish the parameters of implied actual authority." Doc. 80, p. 18 (citing *Barton*, 735 S.W.2d at 162 n. 2; *Molasky*, 615 S.W.2d at 87; and *Dudley*, 526 S.W.2d at 844). The Court found that Concannon relied on Lindner to prepare documents and represent his business and financial interests, and paid Lindner to represent his interests. This relationship was established before execution and delivery of the Guaranty, and delivery of the Guaranty squarely fell within those same parameters.

Conannon has therefore failed to demonstrate manifest error of law or fact with respect to his arguments concerning actual agency.

C. **Fiduciary relationship and negligence.**

Concannon's final argument for amendment is that the Court overlooked evidence that Lindner was his fiduciary. Concannon argues at length that the evidence showed a fiduciary relationship between himself and Lindner, that he was entitled to rely on Lindner, and that Lindner committed misrepresentation by omission. *See* Doc. 85, pp. 12-16 of 18 (Section III). He asks the Court to find "that the record abundantly shows that José Lindner was Concannon's fiduciary, and [to] therefore conclude[e] as a matter of law [that] Concannon was free from

9

negligence." Doc. 84, p. 2. Concannon demonstrates no basis for amendment.

The Court held that Concannon had not shown Lindner was acting in a fiduciary capacity when he presented the Guaranty to Concannon, nor that Lindner had misrepresented the document. However, the Court held, even if Concannon had produced such evidence, he had failed to prove that any negligence on his part should be excused. Doc. 80, p. 17. As the Court explained, Missouri courts have recognized that carelessness or negligence by a signer might be excused under some circumstances if the signer has placed his trust in another and signed a document without reading it. *Id.,* p. 16 (citing *Gideon v. Teed*, 264 S.W. 70 (Mo. App. 1924), and *Rau v. Robertson,* 260 S.W. 751 (Mo. 1924)). In *Gideon,* for example, a daughter induced her mother to sign a promissory note by falsely telling the mother that it was a receipt. Because the mother arguably had a right to rely on her daughter, it would be for a fact finder to determine whether the mother was guilty of negligence when she did not read the document. The court stated: "We do not think it will widen the exception [of fraud in the factum] to permit a jury to consider under all the circumstances whether the defendant was guilty of negligence." 264 S.W. at 72.

As the fact finder, the Court concluded that under all the circumstances of this case, Concannon's negligence may not be excused. The Court cited its finding that Concannon knew he was signing a guaranty of Providence Farms' debts, even if Lindner never asked him to guaranty the debts, and never told him that he would be guaranteeing the debts. The Court also cited evidence that one year earlier, Concannon had taken a Providence Farms operating agreement, given to him by Lindner for signature, to an attorney for review. The Court held that Concannon "did not blindly sign whatever was put in front of him" and further observed that "Concannon is well educated and experienced in business, including real estate development."

"Under these circumstances, the Court [found] that Concannon's negligence if any, is not excused." Doc. 80, p. 17. Based on the record, the Court found that Radiance had established, by the greater weight of the evidence, that Concannon executed the Guaranty, and that Concannon failed to establish a fraud in the factum defense. *Id.*

Concannon cites *Woosley v. Wells,* 281 S.W. 695 (Mo. 1926), for the proposition that he was entitled to rely on Lindner as his fiduciary to "learn" the contents of the Guaranty, Doc. 85, p. 12 of 18, but *Woosley* does not support amendment of the Order and Judgment. Rather, it is consistent with this Court's analysis. In *Woosley*, the instrument that the plaintiff signed was the release of a claim for damages for personal injury against a railway company. The Court of Appeals considered the well-known rule that, where one has an opportunity to read and inform himself of the contents of an instrument, and by his own neglect fails to do so before signing it, he cannot later assert that he did not know its contents, or that the instrument does not express what he agreed to. 281 S.W. at 701 (and citations therein). Although the plaintiff could not read, the evidence showed that his signature was not procured under duress, and while people were present who were capable of reading the document to him, he did not ask them to do so, notwithstanding his own testimony that he had some doubt about the wisdom of signing the document without having it read to him. *Id.* The court held that the plaintiff's own testimony at trial "convicts him of such negligence as a matter of law in the execution of the release as to preclude him from challenging the validity thereof." *Id.* at 700. In short, authority such as *Gideon* and *Woosley* demonstrates that a party's own negligence may foreclose an argument for reliance on another in execution of a document. No authority cited by Concannon demonstrates that the mere existence of a fiduciary relationship excuses a party's negligence as a matter of law, nor is the Court aware of such authority.

Concannon additionally argues that Lindner misrepresented the contents of the Guaranty by failing to tell Concannon about the contents or explain the effect of signing it, and that intelligent and successful people have an equal right to rely on a fiduciary. Doc. 85, p. 17 of 18. The Court has already discussed the law and evidence relating to Concannon's negligence, and rejected his argument that a fiduciary relationship could excuse his negligence.

Concannon has failed to demonstrate any manifest error of law or fact with respect to his third argument for amendment.

## II.     Radiance's petition for attorney fees and costs.

The terms of the Guaranty include the guarantor's agreement to pay the costs of collection, "including but not limited to, reasonable attorneys' fees, court costs and other legal expenses." Plaintiff's Exhibit 7, p. 2, ¶ 11. The Order and Judgment of 10/10/2017 provide that Radiance may recover its costs of collection.

Radiance has accordingly filed a petition for recovery of attorney fees expended through 10/16/2017, in the total amount of $84,857.50[1], and expenses of mileage and one night's hotel stay during trial, in the total amount of $444.65[2]. Although the supporting chart attached to the petition is unsworn, Doc. 83-1, Concannon did not file any response to the petition, nor any response to the order to show cause why the petition should not be granted, Doc. 89.

In view of all the circumstances, the petition is granted. This case was filed on 10/26/2016. The parties filed extensive briefing on motions for summary judgment, and extensive pre- and post-trial briefs. The case was tried to the Court in a day-long trial almost a

---

[1] Radiance lists Braden Perry's time as 5.2 hours at $325 per hour and 78.4 at $350 per hour; Sarah Rowe's time as 7.5 hours at $250 per hour; and Marc S. Wilson's hours as 165.7 at $325 per hour. Doc. 83-1.

[2] The mileage is listed as: 4/27/2016 -- mileage to and from mediation (128 miles at $.54 per mile); 9/25/2017 – mileage to and from trial (160 miles at $.54 per mile); and the hotel expense is listed as: 9/25/2017 at $133.62. Doc. 83-1.

year after it was filed. The case was hard fought and Radiance obtained an excellent result. Furthermore, the straightforward terms of the Guaranty, which the Court concluded Concannon executed, provide for his payment of reasonable attorney fees and other legal expenses. Concannon has not objected to the petition, having failed to file any response to it, or to the Court's Order to show cause why it should not be granted. He has therefore waived any objection to the petition. Nothing appearing before the Court suggests that the request made in the petition is unreasonable or otherwise beyond the terms of Concannon's agreement, reflected in the Guaranty, to pay the costs of collection.

Accordingly, the petition for award of attorney fees in the amount of $84,857.50, and costs in the amount of $444.65, is granted.

**III.　Conclusion**

For the reasons discussed above, Defendant Concannon's Motion to Amend Findings and Judgment, Doc. 84, is denied. Plaintiff Radiance Capital's Petition for Award of Attorneys' Fees and Costs, Doc. 83, is granted.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:　December 29, 2017  
Jefferson City, Missouri